IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | § | |
|---|---|---|
| | § | |
| | § | |
| **CHART TRADING DEVELOPMENT, LLC.** | § | **CASE NO. 6:15-cv-1136-JDL** |
| | § | (lead case) |
| **v.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **TRADESTATION GROUP, INC., et al** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants'[1] Motion to Stay or Alternatively Dismiss Proceedings Pending Covered Business Method Patent Review. (Doc. No. 42) Plaintiff Chart Trading Development, LLC ("CTD") has filed a response (Doc. No. 83), and Defendants have filed a reply (Doc. No. 105). On March 29, 2016, the Court heard argument. Having fully considered the parties' arguments and for the reasons set forth herein, Defendants Motion (Doc. No. 42) is **GRANTED-IN-PART** as set forth herein.

## BACKGROUND

On December 3, 2015, CTD filed four separate lawsuits against a total of thirty-two defendants (collectively "Defendants") alleging infringement of certain U.S. patents. (6:15-cv-

---

[1] Moving Defendants are Apex Investing Institute LLC, CQG, Inc., CQGT, LLC, CV Futures, LLC (d/b/a Clear View Futures), Cobra Trading, Inc., Crossland LLC (Consolidated Civil Action 6:15cv1133), Crossland LLC (Consolidated Civil Action 6:15cv1134), Dorman Trading Company, Inc., Dorman Trading, L.L.C., E D & F Man Capital Markets Inc., FXCM Global Services, LLC, Gar Wood Securities, LLC, Interactive Brokers, LLC (Consolidated Civil Action 6:15cv1135), Interactive Brokers, LLC (Consolidated Civil Action 6:15cv1134), MB Trading Futures, Inc., NinjaTrader Group, LLC, NinjaTrader, LLC, Progressive Trading Group Ltd., R.J. O'Brien & Associates LLC, Redcape LLC (d/b/a Redcape Investments), Robbins Futures Inc. (d/b/a Robbins Trading Company), Rosenthal Collins Group, LLC (Consolidated Civil Action 6:15cv1133), Rosenthal Collins Group, LLC (Consolidated Civil Action 6:15cv1134), The Price Futures Group, Inc., Trade FX Futures (d/b/a tradefxfutures.com), Trade Futures 4 Less (d/b/a tradefutures4less.com), TradePro Futures, Inc., TradeStation Group, Inc., TradeStation Securities, Inc., TradeStation Technologies, Inc., Wedbush Futures (d/b/a wedbushfutures.com), Wedbush Futures (d/b/a www.efutures.com).

1

1133 (Doc. No. 1); 6:15-cv-1134 (Doc. No. 1); 6:15-cv-1135 (Doc. No. 1); 6:15-cv-1136 (Doc. No. 1).) Specifically, in the 6:15-cv-1133 case, CTD alleges infringement of U.S. Patent Nos. 7,113,190 ("the '190 Patent"), 8,380,611 ("the '611 Patent"), 7,890,416 ("the '416 Patent), 8,041,626 ("the '626 Patent"), and 8,060,435 ("the '435 Patent") (collectively "patents-in-suit") against the "CQG" Defendants.[2] In the 6:15-cv-1134 case, CTD alleges infringement of the '190 and '611 Patents against the "NinjaTrader" Defendants.[3] In the 6:15-cv-1135 case, CTD alleges infringement of the '190, '611, '416, and '626 Patents against the "Interactive Brokers" Defendants,[4] and in the 6:15-cv-1136 case, CTD alleges infringement of the '190, '611, and '416 Patents against the "TradeStation" Defendants.[5] On February 4, 2016, these civil actions were consolidated into the lead action, 6:15-cv-1136.

Pursuant to Section 18(b) of the Leahy-Smith America Invents Act ("AIA"), on February 19, 2016, Defendants filed two petitions with the PTAB, seeking invalidity of the '190 and '611 Patents (respectively) under Covered Business Method review ("CBM review"). (PTAB-CBM2016-00038, PTAB-CBM2016-00039.) Shortly thereafter, on March 18, 2016, Defendants filed three additional petitions for CBM review as to the additional three patents-in-suit. (PTAB-CBM2016-00046, PTAB-CBM2016-00047, PTAB-CBM2016-00048.) On February 22, 2016, Defendants collectively filed the instant motion to stay in the lead action. The Court conducted a scheduling conference on March 29, 2016, and heard argument on the motion. No schedule has

---

[2] CQG, Inc., CQGT, LLC, CV Futures, LLC (d/b/a Clear View Futures), Crossland LLC, Dorman Trading Company, Inc., Dorman Trading, L.L.C., E D & F Man Capital Markets Inc., R.J. O'Brien & Associates LLC, Redcape LLC (d/b/a Redcape Investments), Rosenthal Collins Group, LLC, The Price Futures Group, Inc., Trade FX Futures (d/b/a tradefxfutures.com), Trade Futures 4 Less (d/b/a tradefutures4less.com), TradePro Futures, Inc., Wedbush Futures (d/b/a www.efutures.com).
[3] Apex Investing Institute LLC, Crossland LLC, FXCM Global Services, LLC, Interactive Brokers, LLC, MB Trading Futures, Inc., NinjaTrader Group, LLC, NinjaTrader, LLC, Progressive Trading Group Ltd., Robbins Futures Inc. (d/b/a Robbins Trading Company), Rosenthal Collins Group, LLC, Wedbush Futures (d/b/a wedbushfutures.com).
[4] Cobra Trading, Inc., Gar Wood Securities, LLC, Interactive Brokers, LLC.
[5] TradeStation Group, Inc., TradeStation Securities, Inc., TradeStation Technologies, Inc.

yet been entered in the above actions, and the PTAB has not yet instituted review on the CBM petitions.

## LEGAL STANDARD

Section 18 of the AIA establishes the Transitional Program for CBM review. 157 Cong. Rec. S1360-02(2011); AIA § 18. For purposes of the statute, a "covered business method" patent is defined as "a patent that claims a method or corresponding apparatus for performing date processing operations utilized in the practice, administration, or management of a financial product of service, except that the term does not include patents for technological inventions." 37 C.F.R. § 42.301(a); AIA § 18(d).

The transitional program provides a statutory stay provision under which a party may seek stay of a civil action alleging infringement of the CBM patent. AIA § 18(b)(1). Section 18 "places a very heavy thumb on the scale in favor of a stay being granted." 157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer). "Since the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay." *Id.* Nevertheless, "staying a patent case during reexamination is discretionary, and such determination must rest on the facts of each particular case." *Sightsound Techs., LLC v. Apple,* No. 11-1292, 2013 WL 2457284 at *1 (W.D. Penn. June 6, 2013) (citing *Nippon Steel & Sumito Metal Corp. v. POSCO & POSCO Am. Corp.,* No. 12-2429, 2013 U.S. Dist. LEXIS 62710, at *11-12 (D.N.J. May 2, 2013).)

The courts are directed to base their decision as to whether or not to grant such a stay on four factors: "(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial; (B) whether discovery is complete and whether a trial date has been set; (C)

whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1). This four-factor test "closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination by the [patent office]." 157 Cong. Rec. S1350-02; *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.,* 922 F.Supp.2d 486, 489 (D. Del. Feb. 5, 2013). The only difference between the CBM test and the court's traditional test is the addition of the fourth factor, which requires courts to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1). Some courts interpret this additional consideration as "[having] ease[d] the movant's task of demonstrating the need for a stay." *Market-Alerts,* 922 F.Supp. 2d at 489–90; *see also Progressive Casualty Ins. Co. v. Safeco Ins. Co., et al.,* Nos. 1:10-cv-13770, 1:11-cv-00082, 1:12-cv-01068, 1:12-cv-01070, 2013 WL 1662952 (N.D. Ohio April 17, 2013); *Zillow v. Trulia,* No. C-12-1549-JLR, 2013 WL 5530573 (W.D. Wash. Oct. 7, 2013).

Although legislative history does emphasize the importance Congress attached to stays pending CBM review, the "stay is not automatic," and rather it falls to the district court to use its discretion in deciding whether to stay the proceedings, "taking into account certain equitable factors as may exist in the particular case." *VirtualAgility, Inc. v. Salesforce.com, Inc., et al.,* 759 F.3d 1307, 1322 (Fed. Cir. 2014). Thus, staying cases pending CBM review remains within the court's discretion, and "such determination must rest on the facts of each particular case." *See Sightsound*, 2013 WL 2457284 at *1. Whether to ultimately grant or deny such a stay flows from the court's inherent authority to manage its own trial docket. *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936).

4

**DISCUSSION**

As noted above, the Court has inherent discretion whether to grant a stay in patent litigation. *See Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). A final decision is made with "an eye toward maintaining an even balance between the competing interests of the parties at issue." *TruePosition, Inc. v. Polaris Wireless, Inc.*, C.A. No. 12-646, 2013 WL 5701529, at *2 (D. Del. Oct. 21, 2013) (citing *SoftView LLC v. Apple, Inc.,* C.A. No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677, at *6-7 (D. Del. July 26, 2012). As such, the Court analyzes each statutory factor in turn with respect to the facts presented in the instant action.

**I.     Simplification of Issues**

The first statutory factor requires the Court to consider whether a stay will simplify the issues in question and streamline the trial. As other courts have previously recognized, staying an infringement case pending review can simplify litigation in several ways:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if the patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the [administrative review] may encourage a settlement without further involvement of the court, (5) the record of the [administrative review] would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Market-Alerts,* 922 F.Supp.2d at 491 (citing *Gioello Enters. Ltd. v. Mattel, Inc.,* No. 99-375-GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001).

Defendants argue that a stay will simplify the issues because for any claim that the PTAB invalidates issues of claim construction, invalidity, non-infringement, and damages will not have to be litigated in this Court, and for any claim that the PTAB affirms, the estoppel provisions of the AIA will prevent Defendants from asserting invalidity on the same grounds raised during the

PTAB proceeding. (Doc. No. 42, at 13.) Moreover, Defendants argue that institution and invalidation is likely as the asserted patents relate to graphical user interfaces ("GUI") and cite to a similar GUI patent for which the PTAB recently instituted CBM review. (Doc. No. 42, at 14.) CTD initially responded that the issues will not be simplified by a stay because only eighteen of the thirty-two Defendants had joined in the two petitions that were filed prior to the filing of this motion, and therefore, only those eighteen would be estopped under Section 18(a) of the AIA. (Doc. No. 83, at 10.) However, since then, all five petitions have been filed and all Defendants have agreed to be estopped by the AIA estoppel provision with respect to the patents asserted against them in this litigation. (Doc. No. 105, at 7.) CTD also argues that, with respect to the first two petitions filed, Defendants only cite one prior art obviousness combination against all claims, and therefore the breadth of any estoppel in this Court would be limited in scope. (Doc. No. 83, at 10–11.)

Here, CBM petitions have been filed on all of the patents-in-suit and all Defendants have agreed to estoppel as to the patents asserted against them in this litigation. Because in this instance CBM review has not yet been instituted, the Court will not speculate as to the likelihood of institution. The threshold issue of whether to institute CBM review is an issue for the PTAB to decide, not this Court. *See Sightsound,* 2013 WL 2457284 at *1. Regardless of the likelihood of institution, the Court finds a stay would streamline the issues in this case. If the petitions are granted and a final written decision as to the validity of the asserted claims is issued, the issues before this Court will be greatly streamlined and duplicative resources will not have been wasted. Should the PTAB deny Defendants' petitions for CBM review, or grant CBM review with a narrow scope, the Court can appropriately lift the stay and resume litigation with minimal delay. Therefore, this factor weighs in favor of granting a temporary stay.

## II. Stage of the Litigation

The second factor, which has the court consider how far litigation has progressed, likewise favors a stay. AIA § 18(b)(1)(B). Staying a case at an early juncture can "advance judicial efficiency and maximize the likelihood that neither the [c]ourt nor the parties expend their assets addressing invalid claims." *Market-Alerts,* 922 F.Supp.2d at 494, (citing *SenoRx, Inc, v. Hologic, Inc.,* No. 12-173-LPS-CJB, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013).) When confronted with a motion to stay in later stages of the case, however, "the [c]ourt and parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Id.*

Defendants argue that the infancy of this case strongly weighs in favor of a stay because discovery has yet to begin, no scheduling order has issued, and the only deadlines that have occurred are those set by the initial pleadings and the local patent rules. (Doc. No. 42, at 18.) CTD argues that the fact that a *Markman* date and trial date were given at an initial status conference, and that it has served its infringement contentions and production pursuant to P.R. 3-1 and 3-2, weigh against a stay. (Doc. No. 83, at 11.)

This Court previously granted a temporary stay where CBM review had not yet been instituted and the case was at an early juncture. *See Landmark Tech. LLC v. iRobot Corp.*, No. 6:13-cv-411-JDL, 2014 WL 486836, at *3 (E.D. Tex. Jan. 24, 2014) (finding this factor to weigh in favor of a stay where the Court had "merely held a scheduling conference, issued several routine and administrative orders, and discovery ha[d] just begun."). Here, the case has not even progressed to the point where the Court granted the stay in *Landmark*. No Scheduling Order has been entered by the Court, discovery has not yet begun, and the Court and parties have yet to

address discovery exchanges, claim construction, depositions, expert discovery, and case dispositive motions. A decision by the PTAB regarding whether to grant CBM review is expected within the next six months. Because the motion to stay was filed so early in the litigation and the Court can lift the stay with minimal delay, this factor also weighs in favor of granting at least a temporary stay.

## III.     Undue Prejudice to Plaintiff

The Court is next instructed to consider the potential for a stay to unduly prejudice the plaintiff or present a clear tactical disadvantage. AIA § 18(b)(1)(C). Defendants argue that CTD will not suffer undue prejudice or disadvantage if the Court grants a stay because Defendants filed their motion very early in the case, and CTD non-practicing entity that delayed filing suit for several years. (Doc. No. 42, at 19.) Therefore, Defendants argue that CTD can be adequately compensated with monetary damages for any alleged infringement prolonged by the stay. *Id.* Further, Defendants argue that any harm from a stay would be minor given the regulatory and statutory time limitations for CBM institution and review. *Id.* at 20. Finally, Defendants argue that any speculative harm to CTD "pales in comparison to the costs that Defendants will incur if the case proceeds." *Id.* CTD argues that, if instituted, CBM proceedings will take nearly three years, and that even waiting six months would be highly prejudicial because of the nature of the competitive and evolving technology covered by the asserted patents. (Doc. No. 83, at 12.) CTD instead argues that the least harmful course would be to let this case proceed as normal until an institution decision has been made.

The Court recognizes that CTD has a legitimate interest in the timely enforcement of its patent rights. *Ambato Media, LLC v. Clarion Co., Ltd,* 2:09-cv-242, 2012 WL 194172, at *1 (E.D. Tex. Jan. 23, 2012); *Voltstar Technologies, Inc. v. Superior Commc'ns, Inc.,* 2:12-cv-

00082, 2013 WL 4511290, at *2 (E.D. Tex. Aug. 22, 2013). However, the Court also recognizes the reduced time-frame allotted by Congress for CBM review institution and completion. The CBM review process initiated by Congress is required by law to conclude one year after initiation and only extendable by six months with a showing of good cause. 37 C.F.R. §§ 42.301, 42.200(c). Ultimately, Defendants have a choice whether to proceed with PTAB petitions in conjunction with an ongoing district court litigation. Here, Defendants have represented to the Court that they have chosen to put their best efforts and significant costs into pursuing what they feel are meritorious CBM petitions. Defendants have also represented that they do not plan to come back to the Court with additional stay requests based on other post grant review proceedings. This lessens the Courts concerns that a stay is being requested as a dilatory tactic. Moreover, Defendants' filing of the motion to stay merely two to three months into the litigation does not appear to be dilatory. Since the parties and the Court will have a definitive answer from the PTAB whether it will grant CBM review on Defendants' petitions within the next six months, the Court finds this factor neutral. While a delay in proceeding with its case may be somewhat prejudicial to CTD, the delay here is minimal and at the earliest stages of the case, and is therefore not unduly prejudicial.

## IV.   Burden of Litigation

Section 18 of the AIA adds a fourth factor to the traditional stay analysis, instructing the court to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1)(D). It appears the intent of this provision was to "ensure that district courts would grant stays pending CBM review proceedings at a higher rate than they have allowed stays pending *ex parte* reexaminations." *Market-Alerts,* 944 F.Supp.2d at 496. Further, the Court considers the strong language proffered in the legislative history of the

AIA where, in considering this fourth factor, Section 18 "places a very heavy thumb on the scale in favor of a stay being granted" and an expectation that "if a proceeding against a business method patent is instituted, the district court would institute a stay of litigation unless there were an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination. 157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer). "Since the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay." 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen. Charles Schumer).

Defendants argue that granting the instant motion will reduce the burden of litigation on both the parties and the court because the fast pace of the Court's docket will require enormous resources to spent in the approximately six months before a CBM institution decision is made. (Doc. No. 42, at 21.) CTD argues that going forward in with all patents and all parties in this Court is most efficient, and that unless the PTAB invalidates all of the claims of all five patents, the litigation burden will be increased. (Doc. No. 83, at 13.) Here, the Court finds that a temporary stay of these proceedings will reduce the burden of litigation by allowing the parties' resources to be focused on the CBM review and avoiding the expenditure of resources on the copendency of this action during that time frame. CTD has not articulated a plausible basis for a lessened burden of litigation by allowing this action to proceed simultaneously. Moreover, the stay would be effective as to all parties and all proceedings. Depending on the outcome of the PTAB's institution decisions, the Court can then more properly reevaluate whether to lift the stay in whole or in part, or whether to keep the stay in whole or in part. At that point, both the Court

and the parties will be better suited to set an appropriate schedule for these cases to proceed forward. Thus, this factor weighs in favor of granting a stay.

## CONCLUSION

Having considered the submissions of the parties and for the reasons set forth herein, the request for stay is **GRANTED** until the PTAB issues a determination of whether it will grant CBM review as to *all* petitions.  Because the Court **GRANTS** a temporary stay as stated herein, Defendants' alternative request to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6) is **DENIED** without prejudice. Defendants' are directed to provide the Court with a status report within ten days of the PTAB's decision on institution as to the last-decided petition of all five petitions.  Should the PTAB institute CBM review on any or all of the petitions, CTD is to discuss in their status report how completion of the review will simplify the issues before the Court.  The status report should include a summary as to the PTAB's decisions on all five petitions, the claims instituted or not instituted, the Defendants and cases impacted by each decision, and the requested relief going forward.[6] CTD may respond within five days of Defendants' filing.  Depending on the scope of institution by the PTAB, the Court will at that time determine whether the stay will continue until the completion of the CBM review, or set an appropriate Scheduling Order. The Clerk of Court is directed to stay these actions (6:15-cv-1133; 6:15-cv-1134; 6:15-cv-1135; 6:15-cv-1136) until further notice from the Court.

---

[6] In view of Defendants' representations regarding the importance of taking up the threshold questions of validity in an expedited CBM proceeding, the Court does not expect that if the stay should be lifted at a later point in time that Defendants will come back to the Court with numerous additional early dispositive motions or motions to transfer venue. While the Court is granting this temporary stay, the time that passes during the stay will be counted against any future-filed motions pertaining to "threshold" issues.

**So ORDERED and SIGNED this 29th day of March, 2016.**